IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | : | CIVIL ACTION |
| 175 Berkeley Street | : | |
| Boston, MA  02117, | : | NO. |
|             Plaintiff | : | |
| | : | |
|    v. | : | |
| | : | |
| RED ROOF INNS, INC. | : | |
| 7815 Walton Parkway | : | |
| New Albany, OH  43054 | : | |
|      and | : | |
| RED ROOF FRANCHISING, LLC | : | |
| 7815 Walton Parkway | : | |
| New Albany, OH  43054 | : | |
|      and | : | |
| RRI WEST MANAGEMENT, LLC | : | |
| 7815 Walton Parkway | : | |
| New Albany, OH  43054 | : | |
|      and | : | |
| G.D. | : | |
| c/o Nadeem A. Bezar, Esquire | : | |
| Kline & Specter | : | |
| 1525 Locust Street, | : | |
| Philadelphia, PA  19102 | : | |
|      and | : | |
| N.Z., | : | |
| c/o Nadeem A. Bezar, Esquire | : | |
| Kline & Specter | : | |
| 1525 Locust Street, | : | |
| Philadelphia, PA  19102, | : | |
|           Defendants | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**
**OF LIBERTY MUTUAL FIRE INSURANCE COMPANY**

## I.      INTRODUCTION

     1.       This is an action for declaratory relief and judgment pursuant to 28 U.S.C. §§ 2201

and 2202. Plaintiff Liberty Mutual Fire Insurance Company ("LMFIC") seeks a declaration of its

rights and obligations as to Defendants Red Roof Inns, Inc. ("Red Roof Inns"), Red Roof Franchising, LLC ("Red Roof Franchising"), and RRI West Management, LLC ("RRI West") (collectively, the "Red Roof Entities") under a certain policy of insurance issued by LMFIC to Red Roof Inns.

2.      The matters that give rise to LMFIC seeking such a declaration are two underlying lawsuits (collectively, the "Underlying Lawsuits") filed against the Red Roof Entities by two individuals (the "Underlying Plaintiffs") who allege that they were trafficked for sex at, among other locations, a hotel owned or operated by the Red Roof Entities, located at 3100 Lincoln Highway, Feasterville-Trevose, Pennsylvania (the "Underlying Hotel").

3.      In each of the Underlying Lawsuits, the Underlying Plaintiffs allege that the Red Roof Entities knowingly benefited from their participation in the trafficking of the Underlying Plaintiffs at the Underlying Hotel which, they allege, was owned, operated, or managed by the Red Roof Entities. Furthermore, the Underlying Plaintiffs allege that Red Roof Inns and the other Red Roof Entities, which were owned in whole or in part by Red Roof Inns, condoned, facilitated, and benefited from the trafficking that occurred at the Underlying Hotel.

4.      Among other relief and declarations, LMFIC seeks a declaration that it has no duty to defend or indemnify the Red Roof Entities against the Underlying Lawsuits because, among other reasons, the Underlying Plaintiffs' alleged injuries were not caused by an occurrence and were either expected or intended by the Red Roof Entities, and the public policy of the Commonwealth of Pennsylvania prohibits insurance coverage for the Underlying Lawsuits.

5.      G.D. and N.Z., as the Underlying Plaintiffs, are nominal parties to this declaratory judgment action. The Underlying Plaintiffs have been named solely so that they will be bound by

the judgment in this action. LMFIC does not seek relief from the Underlying Plaintiffs. In the event

that the Underlying Plaintiffs stipulate and agree to be bound by the judgment entered in this case,

LMFIC will voluntarily dismiss them from this action.

## II.    **PARTIES**

6.    LMFIC is a corporation organized under the laws of the State of Wisconsin with its

principal place of business in Boston, Massachusetts.

7.    Upon information and belief, Red Roof Inns is a Delaware corporation with its

principal place of business in Ohio. Upon information and belief, at all relevant times, Red Roof

Inns owned, operated, managed, or was inextricably connected to the renting of rooms at, the

Underlying Hotel.

8.    Upon information and belief, Red Roof Franchising is a Delaware limited liability

company with its principal place of business in Ohio. Upon information and belief, at all times

relevant to this Complaint, Red Roof Inns owned more than 50% of Red Roof Franchising. Upon

information and belief, at all relevant times, Red Roof Franchising owned, operated, managed, or

was inextricably connected to the renting of rooms at, the Underlying Hotel.

9.    Upon information and belief, RRI West is a Delaware limited liability company

with its principal place of business in Ohio. Upon information and belief, at all times relevant to

this Complaint, Red Roof Inns owned more than 50% of RRI West. Upon information and belief,

at all relevant times, RRI West owned, operated, managed or was inextricably connected to the

renting of rooms at the Underlying Hotel.

10.     Upon information and belief, G.D. is a resident and citizen of the Commonwealth of Pennsylvania, and may be served through her counsel, Nadeem A. Bezar, at Kline & Specter, P.C.

11.     Upon information and belief, N.Z. is a resident and citizen of the Commonwealth of Pennsylvania, and may be served through her counsel, Nadeem A. Bezar, at Kline & Specter, P.C.

## III.    **JURISDICTION AND VENUE**

12.     This is a proceeding for declaratory relief pursuant to Title 28 of the United States Code, § 2201, *et seq,* to determine the scope of the respective rights, duties, and obligations, if any, of LMFIC under a contract of liability insurance with respect to the Underlying Lawsuits, for which the Red Roof Entities have sought coverage from LMFIC.

13.     Jurisdiction for this proceeding is proper in the federal court pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this Complaint occurred in this district.

## IV.    **FACTUAL BACKGROUND**

### A.    **The Underlying Lawsuits.**

#### i.    ***G.D. v. Knights Inn of Trevose, et al.***

15.     On December 17, 2019, G.D. filed a lawsuit in the Court of Common Pleas, Philadelphia County, captioned *G.D. v. Knights Inn of Trevose, et al.*, Case No. 191202631 (the "Underlying G.D. Lawsuit").

16.     In the Fourth Amended Complaint (the "Underlying G.D. Lawsuit Complaint"), G.D. alleges that in January 2015 she "was trafficked for commercial sex at" the Underlying Hotel. Underlying G.D. Lawsuit Complaint, ¶ 10 (attached as **Exhibit 1**). She further alleges that, on January 31, 2015, she "was rescued from her trafficker after police arrived" at the Underlying Hotel. *Id.* at ¶ 87.

17.     G.D. alleges that the Red Roof Entities "owned, operated and/or managed" the Underlying Hotel. *Id.* at ¶¶ 38–43.

18.     G.D. alleges that she was "visibly treated in an aggressive manner by her trafficker" and that she "exhibited fear, anxiety and displayed signs of impairment while on the premises and in public areas" of the Underlying Hotel. *Id.* at ¶¶ 81–82.

19.     G.D. alleges that men "frequently entered and left the rooms" where she engaged in commercial sex acts, and that during this period the money she received in exchange for sex was used by her trafficker to pay for the hotel rooms in cash. *Id.* at ¶¶ 84–86.

20.     G.D. alleges that her trafficker would "put up internet advertisements for the purpose of prostituting [her]," which "often included both the name and address of the [Underlying Hotel]." *Id.* at ¶¶ 74–75.

21.     G.D. alleges that she and N.Z. were trafficked together, by the same individual. *Id.* at ¶ 72.

22.     G.D. alleges that "[b]etween approximately 2012 to 2017 Bensalem Township Police Department reported to the [Underlying Hotel] approximately 639 times for suspected criminal activity." *Id.* at ¶ 91.

23.     G.D. alleges that "[d]espite actual knowledge, constructive knowledge and general awareness of the signs of human trafficking," the Red Roof Entities "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of [her]." *Id.* at ¶ 113.

24.     G.D. alleges that the Red Roof Entities "knew that they were renting rooms to the individual [who was] sex trafficking [G.D.], which resulted in her being sex trafficked and sexually exploited," and "financially benefited from allowing or permitting commercial sex activity and human trafficking at" the Underlying Hotel. *Id.* at ¶¶ 139–40.

25.     In the Underlying G.D. Lawsuit, G.D. asserts causes of action against the Red Roof Entities for: (i) violation of the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3051; (ii) negligence; (iii) negligent infliction of emotional distress; and (iv) negligent hiring, training, and/or supervision.

### ii.     *N.Z. v. Knights Inn of Trevose, et al.*

26.     On December 17, 2019, N.Z. filed a lawsuit in the Court of Common Pleas, Philadelphia County, captioned *N.Z. v. Knights Inn of Trevose, et al.*, Case No. 191202642 (the "Underlying N.Z. Lawsuit").

27.     In the Fourth Amended Complaint, N.Z. alleges that in January 2015 she "was trafficked for commercial sex at" the Underlying Hotel. Underlying N.Z. Lawsuit Complaint, ¶ 10 (attached as **Exhibit 2**). She further alleges that, on January 31, 2015, she "was rescued from her trafficker after police arrived" at the Underlying Hotel. *Id.* at ¶ 87.

28.     N.Z. alleges that the Red Roof Entities "owned, operated, and/or managed" the Underlying Hotel. *Id.* at ¶¶ 38–43.

29.     N.Z. alleges that she was "visibly treated in an aggressive manner by her trafficker" and that she "exhibited fear, anxiety and displayed signs of impairment while on the premises and in public areas" of the Underlying Hotel. *Id.* at ¶¶ 81–82.

30.     N.Z. alleges that men "frequently entered and left the rooms" where she engaged in commercial sex acts, and that during this period the money she received in exchange for sex was used by her trafficker to pay for the hotel rooms in cash. *Id.* at ¶¶ 84–86.

31.     N.Z. alleges that her trafficker would "put up internet advertisements for the purpose of prostituting [her]," which "often included both the name and address of the [Underlying Hotel]." *Id.* at ¶¶ 74–75.

32.     N.Z. alleges that she and G.D. were trafficked together, by the same individual. *Id.* at ¶ 72.

33.     N.Z. alleges that "[b]etween approximately 2012 to 2017 Bensalem Township Police Department reported to the [Underlying Hotel] approximately 639 times for suspected criminal activity." *Id.* at ¶ 91.

34.     N.Z. alleges that "[d]espite actual knowledge, constructive knowledge and general awareness of the signs of human trafficking," the Red Roof Entities "failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of [her]." *Id.* at ¶ 113.

35.     N.Z. alleges that the Red Roof Entities "knew that they were renting rooms to the individual [who was] sex trafficking [N.Z.], which resulted in her being sex trafficked and sexually exploited," and "financially benefited from allowing or permitting commercial sex activity and human trafficking at" the Underlying Hotel. *Id.* at ¶¶ 139–40.

36.    In the Underlying N.Z. Lawsuit, N.Z. asserts causes of action against the Red Roof Entities for: (i) violation of the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3051; (ii) negligence; (iii) negligent infliction of emotional distress; and (iv) negligent hiring, training, and/or supervision.

**B.    The LMFIC Policy.**

37.    Plaintiff LMFIC issued the following commercial insurance policy to Red Roof Inns during the period when G.D. and N.Z. allege in the Underlying Lawsuits that they were trafficked at the Underlying Hotel: Policy No. TB2-641-437760-074, with a policy period of July 1, 2014 to July 1, 2015 (the "LMFIC Policy"). Select pages of the LMFIC Policy are attached hereto as **Exhibit 3, LMFIC-RRI 32 – LMFIC-RRI 42**.

38.    The LMFIC Policy contains two liability coverage parts: (i) Coverage A, Bodily Injury and Property Damage Liability; and (ii) Coverage B, Personal and Advertising Injury Liability.

39.    The LMFIC Policy has an Each Occurrence Limit in the amount of $1 million, a Personal and Advertising Injury Limit in the amount of $1 million, and a General Aggregate Limit in the amount of $2 million. *Id.* at LMFIC-RRI 32.

40.    The LMFIC Policy also has a per location Designated General Aggregate Limit in the amount of $2 million, with a $10 million Total Aggregate Limit for all Projects and Locations. *Id.* at LMFIC-RRI 32, 41–42.

*i.    Coverage A: Bodily Injury and Property Damage Liability.*

41.    The Insuring Agreement for Coverage A of the LMFIC Policy provides, in part, as follows:

SECTION I – COVERAGES

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

     a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

     b.  This insurance applies to "bodily injury" or "property damage" only if:

          (1)  The "bodily injury" or "property damage" is caused by an "occurrence" . . .

          (2)  The "bodily injury" or "property damage" occurs during the policy period.

*Id.* at LMFIC-RRI 33.

42.  The LMFIC Policy defines the term "bodily injury" to mean:

     a.  Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

     b.  Mental anguish, shock or humiliation arising out of injury as defined in Paragraph a. above. Mental anguish means any type of mental or emotional illness or distress.

*Id*. at LMFIC-RRI 40.

43.  With respect to "bodily injury," the LMFIC Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at LMFIC-RRI 39.

44.  Coverage A of the LMFIC Policy contains an Expected or Intended Injury Exclusion, which bars coverage for:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

*Id*. at LMFIC-RRI 36.

ii.    *Coverage B: Personal and Advertising Injury Liability.*

45.    The Insuring Agreement for Coverage B of the LMFIC Policy provides, in part, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed . . . during the policy period.

*Id*. at LMFIC-RRI 34.

46.    The LMFIC Policy defines the term "personal and advertising injury" to mean injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.  Oral or written "publication" directly to the public at large or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.  (1) Oral or written "publication" directly to the public at large of material that violates a person's right of privacy;

       (2) Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness;

    f.  The use of another's advertising idea in your "advertisement"; or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Id*. at LMFIC-RRI 35, 38.

47.    With respect to "personal and advertising injury," the LMFIC Policy defines the term "occurrence" to mean "an offense or series of related offenses." *Id.* at LMFIC-RRI 39.

48.    Coverage B of the LMFIC Policy contains a Knowing Violation of Rights of Another Exclusion, which bars coverage for:

       "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*Id*. at LMFIC-RRI 34.

49.    Coverage B of the LMFIC Policy contains a Criminal Acts Exclusion, which bars coverage for:

       "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

*Id*. at LMFIC-RRI 34.

**C.**    **LMFIC's Reservation of Rights Under the LMFIC Policy.**

50.    On December 21, 2020, LMFIC agreed, subject to a reservation of rights, to provide Red Roof Inns and Red Roof Franchising with a defense against the Underlying G.D. Lawsuit.

51.     On December 21, 2020, LMFIC agreed, subject to a reservation of rights, to provide Red Roof Inns and Red Roof Franchising with a defense against the Underlying N.Z. Lawsuit.

52.     On April 25, 2023, LMFIC agreed, subject to a reservation of rights, to provide RRI West with a defense against the Underlying G.D. Lawsuit.

53.     On April 25, 2023, LMFIC agreed, subject to a reservation of rights, to provide RRI West with a defense against the Underlying N.Z. Lawsuit.

**COUNT I**
**Declaratory Relief – Underlying G.D. Lawsuit**

54.     LMFIC re-alleges and incorporates by reference Paragraphs 1 to 53 as though fully set forth herein.

55.     The LMFIC Policy does not afford coverage under Coverage A for the Underlying G.D. Lawsuit to the extent that G.D.'s alleged "bodily injuries" did not occur during the LMFIC Policy's policy period.

56.     There is no duty to defend the Red Roof Entities under the LMFIC Policy against the Underlying G.D. Lawsuit Complaint because G.D. does not allege "bodily injury" caused by an "occurrence."

57.     There is no coverage under Coverage A for the Underlying G.D. Lawsuit under the LMFIC Policy because G.D.'s alleged "bodily injury" was not caused by an "occurrence."

58.     The Expected and Intended Injury Exclusion bars coverage for G.D.'s alleged "bodily injury" under Coverage A of the LMFIC Policy.

59.     In the Underlying G.D. Lawsuit Complaint, G.D. does not allege an offense resulting in a "personal and advertising injury" under Coverage B of the LMFIC Policy.

60.     In the Underlying G.D. Lawsuit Complaint, G.D. does not allege "personal and advertising injury" arising out of the business of Red Roof Inns under Coverage B of the LMFIC Policy.

61.     To the extent that G.D. alleges "personal and advertising injury" in the Underlying G.D. Lawsuit Complaint, the Knowing Violation of Rights of Another Exclusion in the LMFIC Policy bars coverage for G.D.'s alleged "personal and advertising injury" under Coverage B of the LMFIC Policy.

62.     To the extent that G.D. alleges "personal and advertising injury" in the Underlying G.D. Lawsuit Complaint, the Criminal Acts Exclusion in the LMFIC Policy bars coverage for G.D.'s alleged "personal and advertising injury" under Coverage B of the LMFIC Policy.

63.     The LMFIC Policy does not afford coverage to the Red Roof Entities for the Underlying G.D. Lawsuit.

64.     Because the LMFIC Policy does not afford coverage for the Underlying G.D. Lawsuit, LMFIC is not obligated to defend or indemnify the Red Roof Entities against the Underlying G.D. Lawsuit.

65.     Because the LMFIC Policy does not afford coverage for the Underlying G.D. Lawsuit, LMFIC is entitled to the reimbursement of the amounts that it has paid in connection with the defense of the lawsuits.

**COUNT II**
**Declaratory Relief – Underlying N.Z. Lawsuit**

66.     LMFIC re-alleges and incorporates by reference Paragraphs 1 to 53 as though fully set forth herein.

67.    The LMFIC Policy does not afford coverage under Coverage A for the Underlying N.Z. Lawsuit to the extent that N.Z.'s alleged "bodily injury" did not occur during the LMFIC Policy's policy period.

68.    There is no duty to defend the Red Roof Entities under the LMFIC Policy against the Underlying N.Z. Lawsuit Complaint because N.Z. does not allege "bodily injury" caused by an "occurrence."

69.    There is no coverage under Coverage A for the Underlying N.Z. Lawsuit under the LMFIC Policy because N.Z.'s alleged "bodily injury" was not caused by an "occurrence."

70.    The Expected and Intended Injury Exclusion bars coverage for N.Z.'s alleged "bodily injury" under Coverage A of the LMFIC Policy.

71.    In the Underlying N.Z. Lawsuit Complaint, N.Z. does not allege an offense resulting in a "personal and advertising injury" under Coverage B of the LMFIC Policy.

72.    In the Underlying N.Z. Lawsuit Complaint, N.Z. does not allege "personal and advertising injury" arising out of the business of Red Roof Inns under Coverage B of the LMFIC Policy.

73.    To the extent that N.Z. alleges "personal and advertising injury" in the Underlying N.Z. Lawsuit Complaint, the Knowing Violation of Rights of Another Exclusion in the LMFIC Policy bars coverage for N.Z.'s alleged "personal and advertising injury" under Coverage B of the LMFIC Policy.

74.    To the extent that N.Z. alleges "personal and advertising injury" in the Underlying N.Z. Lawsuit Complaint, the Criminal Acts Exclusion in the LMFIC Policy bars coverage for N.Z.'s alleged "personal and advertising injury" under Coverage B of the LMFIC Policy.

14

75.    The LMFIC Policy does not afford coverage to the Red Roof Entities for the Underlying N.Z. Lawsuit.

76.    Because the LMFIC Policy does not afford coverage for the Underlying N.Z. Lawsuit, LMFIC is not obligated to defend or indemnify the Red Roof Entities against the Underlying N.Z. Lawsuit.

77.    Because the LMFIC Policy does not afford coverage for the Underlying N.Z. Lawsuit, LMFIC is entitled to the reimbursement of the amounts that it has paid in connection with the defense of the lawsuits.

**COUNT III**
**Declaratory Relief – Public Policy Bars Coverage of the Underlying Lawsuits**

78.    LMFIC re-alleges and incorporates by reference Paragraphs 1 to 53 as though fully set forth herein.

79.    Under Pennsylvania's Human Trafficking Law, it is a felony to recruit, entice, solicit, advertise, harbor, transport, obtain, or maintain an individual with reckless disregard for that fact that they will be subject to sexual servitude. 18 Pa. C.S. § 3011, *et seq.*

80.     Under Pennsylvania's Human Trafficking Law, it is a felony to knowingly benefit from any act that facilitates the subjugation of an individual to sexual servitude. 18 Pa. C.S. § 3011, *et seq.*

81.    In addition to imposing criminal liability, Pennsylvania's Human Trafficking Law also provides for the imposition of civil liability against violators. 18 Pa. C.S. § 3051.

82.    Pennsylvania's Human Trafficking Law represents a declaration of Pennsylvania public policy that it is a criminal act to participate in, or benefit from, an individual's sexual servitude.

15

83.    The public policy of the Commonwealth of Pennsylvania bars coverage for an insured's criminal acts.

84.    In the Underlying Lawsuits, the Underlying Plaintiffs allege that the Red Roof Entities have violated Pennsylvania's Human Trafficking Law. *See* Underlying G.D. Lawsuit Complaint, Count I; Underlying N.Z. Lawsuit Complaint, Count I.

85.    In the Underlying Lawsuits, the Underlying Plaintiffs allege that the Red Roof Entities owned and operated the Underlying Hotel where they were trafficked for commercial sex, and that the Red Roof Entities had knowledge that the Underlying Plaintiffs were being trafficked yet profited from that trafficking. *See* Underlying G.D. Lawsuit Complaint, ¶¶ 10, 38–43, 113, 139–40; Underlying N.Z. Lawsuit Complaint, ¶¶ 10, 38–43, 113, 139–40.

86.    Coverage of the Underlying Lawsuits is barred as a matter of the Commonwealth of Pennsylvania's public policy.

87.    Because coverage of the Underlying Lawsuits is barred, the LMFIC Policy does not afford coverage to the Red Roof Entities for the Underlying Lawsuits.

88.    Because the LMFIC Policy does not afford coverage for the Underlying Lawsuits, LMFIC is not obligated to defend or indemnify the Red Roof Entities against the Underlying Lawsuits.

89.    Because the LMFIC Policy does not afford coverage for the Underlying Lawsuits, LMFIC is entitled to the reimbursement of the amounts that it has paid in connection with the defense of the Underlying Lawsuits.

## COUNT IV
## <u>Declaratory Relief – One Occurrence</u>

90.     LMFIC re-alleges and incorporates by reference Paragraphs 1 to 53 as though fully set forth herein.

91.     To the extent that the LMFIC Policy affords coverage for the Underlying Plaintiffs' allegations concerning the Underlying Hotel, then the Underlying Plaintiffs' allegations concerning their alleged "bodily injury" at the Underlying Hotel constitute one "occurrence" under the LMFIC Policy subject to a single Each Occurrence limit of liability.

### PRAYER FOR RELIEF

WHEREFORE, LMFIC seeks the following relief:

1.  With respect to the LMFIC Policy:

    a.  A declaration that, because the LMFIC Policy does not afford coverage for the Underlying G.D. Lawsuit, LMFIC is not required to defend or indemnify Red Roof Inns, Red Roof Franchising, or RRI West against the Underlying G.D. Lawsuit.

    b.  A declaration that, because the LMFIC Policy does not afford coverage for the Underlying N.Z. Lawsuit, LMFIC is not required to defend or indemnify Red Roof Inns, Red Roof Franchising, or RRI West against the Underlying N.Z. Lawsuit.

    c.  A declaration that, because coverage of the Underlying Lawsuits is barred by public policy, LMFIC is not required to defend or indemnify Red Roof Inns, Red Roof Franchising, or RRI West against the Underlying Lawsuits.

    d.  To the extent that the LMFIC Policy affords coverage for G.D.'s and N.Z.'s allegations concerning the Underlying Hotel, there is a single Each Occurrence Limit of liability available, collectively, for G.D.'s and N.Z.'s allegations under the LMFIC Policy.

2.  For any other or further relief that the Court deems just, proper, and equitable.

17

POST & SCHELL, P.C.

Date:  05/03/2023

By   s/John C. Sullivan _____
          John C. Sullivan
          Atty. I.D. No. 32262
          Kathleen K. Kerns
          Atty. I.D. No. 57439
          Jeffrey M. Brenner
          Atty. I.D. No. 313580
          Four Penn Center – 13th Floor
          1600 John F. Kennedy Boulevard
          Philadelphia, PA  19103
          Phone:  (215) 587-1000
          Fax:  (215) 587-1444
          E-mail:  jsullivan@postschell.com
                       kkerns@postschell.com
                       jbrenner@postschell.com
          Attorneys for Plaintiff,
          Liberty Mutual Fire Insurance Company

*Of Counsel:*

Nancy D. Adams *(pro hac to be submitted)*
NDAdams@mintz.com
Alec J. Zadek *(pro hac to be submitted)*
AZadek@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000


Ellen M. Farrell *(pro hac to be submitted)*
EMFarrell@mintz.com
MINTZ LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
555 12th Street NW, Suite 1100
Washington, D.C.  20004
Tel:  (202) 434-7300