IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br>Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC.,<br>RED ROOF FRANCHISING, LLC,<br>RRI WEST MANAGEMENT, LLC,<br>G.D., and<br>N.Z.,<br>Defendants. | CIVIL ACTION<br><br><br>NO.  23-1692 |

**MEMORANDUM**

HODGE, J.                                                                        November 14, 2023

## I.      INTRODUCTION

Plaintiff, Liberty Mutual Fire Insurance Co. ("Plaintiff" or "LMFIC") brought this declaratory judgment action seeking relief from its duty to defend and indemnify Defendants, Red Roof Inns, Inc., Red Roof Franchising, LLC, RRI West Management, LLC's ("Defendants"), in two underlying parallel state court actions arising out of allegations of human trafficking. (ECF No. 1.) Before this Court are Defendants' Motion to Stay (ECF No. 29) and Plaintiff's Motion for Partial Judgment on the Pleadings (ECF No. 30). Defendants ask this Court to stay the case under the Court's discretionary authority to exercise jurisdiction over a declaratory judgment action pursuant to 28 U.S.C. §2201(a), because the pending, underlying state court lawsuits involve determinations of liability also at issue in this action. The state court actions have been ongoing for over three and a half years, and Plaintiff has provided legal representation for Defendants during that time, pursuant to the terms of the insurance policy at issue here. For the reasons discussed below, this Court grants Defendants' Motion to Stay pending the outcome of the state

court lawsuits and denies Plaintiff's Motion for Judgment on the Pleadings as moot without prejudice.

## II.     FACTS

Defendants are policyholders with Plaintiff, and under the insurance policy at issue, they are entitled to defense counsel in certain circumstances. (ECF No. 1-5 at 3.) Pursuant to the Insurance Policy Agreement (the "Policy"), Plaintiff currently provides defense counsel for Defendants in two underlying state court lawsuits. (ECF No. 1 at 11-12.) The state court lawsuits allege Defendants violated Pennsylvania's Human Trafficking statute. (ECF No. 1-3 at 29-34; ECF No. 1-4 at 29-34.) The state court cases were filed December 17, 2019. (ECF No. 1 at 4-6.) In relevant part, the Policy states that it "applies to 'bodily injury' and 'Property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (ECF 1-5 at 3.) The policy defines "[o]ccurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF 1-5 page 5.) Plaintiff now seeks to alleviate itself of its duty to defend, arguing that a legal defense for claims alleging human trafficking violations are excluded from the Policy. (ECF No. 1 at 2.)

## III.     LEGAL STANDARD

Under the Declaratory Judgment Act ("DJA"), courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). This is an exception to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."

*Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716 (1996) (citing *Colo. River Water Conservation*

*Dist. v. United States*, 424 U.S. 800, 821 (1976)).

## IV.    DISCUSSION

Plaintiff brought this declaratory judgment action to request a finding that LMFIC has no

duty to defend or indemnify Defendants in the underlying state court lawsuits, and that LMFIC is

entitled to reimbursement for the amounts it has paid in legal fees thus far. (ECF No. 1 at 13-17.)

Notably, LMFIC brings this lawsuit nearly three and a half years after the underlying lawsuits

were filed in state court, during which time Plaintiff has provided legal representation in defending

the Defendants. (ECF No. 1 at 4-6.)

Under the DJA, District courts have "unique and substantial discretion" over whether to

hear an action seeking declaratory judgment. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d

Cir. 2014.); *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000); *see also* 28 U.S.C. §

2201(a). This discretionary authority applies even when the suit otherwise satisfies subject matter

jurisdictional prerequisites. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). As the Court

of Appeals for the Third Circuit explained in *Summy*, "Congress has afforded the federal courts a

freedom not present in ordinary diversity suits to consider the state interest in having the state

courts determine questions of state law." 234 F.3d at 135.

It is well recognized that "the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the federal court having jurisdiction[.]" *Colorado River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (citing *McClellan v. Carland*,

217 U.S. 268, 282 (1910)). However, the Supreme Court has recognized that under certain

exceptions, a stay by the federal court in the face of a concurrent and related state case is permitted

on the grounds of "[w]ise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation." *Id*. (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). Thus, courts may *sua sponte* consider whether abstention is appropriate. *See Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976); *see also Rose v. Baehr*, Civil No. 19-346, 2019 WL 1386057, at *2 (E.D. Pa. Mar. 27, 2019) (applying *Colorado River* abstention doctrine *sua sponte*); *see also Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

The existence of a parallel state court proceeding strongly militates in favor of abstaining from exercising jurisdiction, and is the first, though not dispositive, factor a district court considers in deciding whether to abstain. *Kelly v. Maxim Spec. Ins. Grp.*, 868 F.3d 274, 282 (3d. Cir. 2017). District Courts in the Third Circuit also look at the *Reifer/Summy* factors in deciding whether to exercise jurisdiction over a declaratory judgment action, which include:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or to provide another forum in a race of res judicata; and
> (8) inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*., 751 F.3d at 142-146; *Summy*, 234 F.3d at 134-135.

The fourth, fifth, sixth, and eighth factors are particularly relevant in this case. As to the fourth factor, LMFIC may seek this remedy at the state level, where the parallel proceedings have

been ongoing for years. "The desire of insurance companies and their insureds to receive

declarations in federal court on matters of purely state law has no special call on the federal forum."

*Summy,* 234 F.3d at 136. Further, "it is counterproductive for a district court to entertain

jurisdiction over a declaratory judgment action that implicates unsettled questions of state law,

questions which might otherwise be candidates for certification to the state's highest court. Such

matters should proceed in normal fashion through the state court system" *Id.* at 135. Consequently,

because the Plaintiff may file this declaratory judgment action in state court, this Court finds the

fourth factor to weigh in favor of abstention. In addition to the availability and convenience of

bringing this claim in state court, the issues before this Court are also matters of first impression

of state law. "[T]he state's interest in resolving its own law must not be given short shrift simply

because one party or, indeed, both parties, perceive some advantage in the federal forum." *Id*. "In

order to maintain the proper relationship between federal and state courts, it is important that

district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law

matters." *Id.* These facts further support staying the case pending the outcome of the state court

proceedings.

The fifth and sixth factors favor exercising judicial restraint when the same issues are

pending in state court and avoiding the inefficiencies of duplicative litigation. The Court finds that

the pending litigation in the Philadelphia Court of Common Pleas is a parallel proceeding, which

weighs heavily in favor of declining to exercise jurisdiction. (ECF No. 1.) "A parallel state

proceeding is a pending matter 'involving the same parties and presenting [the] opportunity for

ventilation of the same state law issues.'" *Kelly*, 868 F.3d at 285 (alteration in original). However,

"[s]trict identity between parties and claims is not necessary" for a state court action and federal

declaratory judgment action to be deemed parallel. *Id*. at 284 n.8. Rather, it only requires the parties

in the state and federal actions to be "closely related" such that "resolution of an issue in one will necessarily settle the matter in another." *Id*. Here, the underlying state court actions are poised to address issues material to the action pending before this Court. Thus, moving forward with this case would be both inefficient and create potentially duplicative findings of fact and law. Further, the instant action was filed on May 3, 2023. (ECF No. 1). By contrast, the underlying state court actions were filed in 2019 (*see* ECF No. 1 at 4-6), discovery was scheduled to be completed in October 2022, and they are currently listed for trial in January 2024. *See G.D. v. Knights Inn of Trevose, et al.*, No.191202631 (Phila. Ct. Com. Pl.); *N.Z. v. Knights Inn of Trevose, et al.*, No. 191202642 (Phila. Ct. Com. Pl.). The underlying state court proceedings are substantially farther along in the litigation process than the instant action, and the issues presented in the state court proceedings will be determinative for the outcome of the case at bar.

The issues of fact and law pending before the state court are essential to determining the questions presented in the case before this Court. Specifically, questions regarding the requisite mental state of the Defendants and relevance of the safe harbor provision under the Pennsylvania Human Trafficking statute, as well as the applicability of exclusion provisions within the Policy, are all material to the outcome of both the instant case and the pending state law actions. Here, the relief from defending and indemnifying Defendants that Plaintiff seeks, turns on whether an exclusion provision to the Policy applies. The Policy, in relevant part, states that it "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (ECF 1-5 at 3.) It also provides that "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ECF 1-5 page 5.) Similarly, the underlying

state lawsuits include allegations that Defendant violated Pennsylvania's Human Trafficking

statute, which states that:

> An individual who is a victim of human trafficking may bring a civil action against any
> person that participated in the human trafficking of the individual in the court of common
> pleas of the county where the individual resides or where any of the alleged violations of
> this chapter occurred.

18 Pa. C.S.A. 3051(a)(1). The offense of human trafficking is defined by whether "the person

recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an

individual if the person knows or recklessly disregards that the individual will be subject to sexual

servitude." 18 Pa. C.S.A. 3011. The statute also contains a safe harbor provision that excludes

from liability:

> any person who provides goods or services to the general public and to a person who would
> be liable under subsection (a)(2), absent a showing that the person:
> (1) knowingly markets or provides its goods or services to a person liable under subsection
> (a)(2);
> (2) knowingly receives a higher level of compensation from a person liable under
> subsection (a)(2); or
> (3) supervises or exercises control over a person liable under subsection (a)(2).

18 Pa. C.S.A. 3051(b).

While the state courts have yet to address these questions, the Eastern District of

Pennsylvania has made divergent holdings as to the questions of statutory interpretation presented

in this case. In *A.B. v. Marriott Intn'l Inc.*, this Court held that a violation of Pennsylvania's Human

Trafficking Act requires actual knowledge or reckless disregard, and that for the safe harbor

provision not to apply, a defendant must have had actual knowledge of the violation. 455 F. Supp.

3d 171, 200-201 (E.D. Pa 2020). Under similar facts to those presented in the instant case, the

*Marriott* Court held that the defendant hotel's actions did not reach either threshold for the purpose

of finding a violation of the Pennsylvania Human Trafficking Act by the accused hotel. *Id*. at 199

(finding that allegations supporting "constructive knowledge" do not establish civil liability under

the Pennsylvania statute). In contrast, in *Samsung Fire & Marine Ins., Co, v. UFVS Mgmt. Co., LLC.*, this Court held that facts similar to those in the instant case *did* reach the threshold necessary to establish liability of reckless disregard against the hotel, without addressing the applicability of the safe harbor provision. No. CV 18-04365, 2023 WL 2574971, at *8 (E.D. Pa. Mar. 20, 2023). Plaintiff now asks this Court to decide if the allegations against Defendants fall under an exclusion to the insurance Policy, which only covers "accidents." However, this question can only be answered with fact finding as to the mens rea of Defendants, and findings of law as to the requisite mental state under the Pennsylvania Human Trafficking statute. Because no state courts or binding federal courts have yet resolved or clarified this question of state law, this Court defers to the state court to provide the applicable statutory analysis before moving forward with this case. The Court therefore finds that the fifth and sixth factors heavily support abstaining from exercising its jurisdiction at the present time.

Lastly, as to the eighth factor, the Court is persuaded by the Defendants' argument that allowing this case to move forward creates a "readily apparent" conflict of interest. (ECF 29-1 at 6.) Indeed, to establish its claim for declaratory judgment, LMFIC has to prove the same factual allegations asserted by the state court plaintiffs: knowing or intentional conduct on behalf of the Defendants. *Id.* If this case were not stayed, it could result in Plaintiff undermining its own defense of Defendants in the underlying suits. *Id.*; *see also Hartford Cas. Ins. Co. v. American Recycling Sys., Inc.*, 2010 WL 3420046, *4 (E.D. Pa. Aug. 25, 2010) (finding conflict of interest existed where insurer sought relief in federal court from its duty to defend under a policy exclusion theory, while simultaneously defending a policyholder in an underlying state lawsuit.) This Court has ruled that, in a case such as this one, (1) where an insurance provider is actively defending an entity in an underlying state court action; and (2) where that same insurance provider simultaneously

pursues declaratory judgment in federal court against the very entity it is defending, seeking relief from defending that entity by arguing the underlying suit falls under a policy exclusion, an "inherent conflict of interest" exists. *Id*. This conflict of interest counsels against exercising jurisdiction over the declaratory judgment action. *Id.* As such, the eighth factor weighs in favor of abstention. In sum, the Court finds that the balance of the *Reifer/Summy* factors weighs strongly in favor of declining to exercise jurisdiction at this time.

## V.    CONCLUSION

Based on the foregoing, the Court will stay this matter pending the outcome of the underlying state actions. This Order is issued without prejudice to the ability of any party to bring a motion to lift the stay entirely or for a limited purpose based on changed circumstances or the presence of a particular issue whose resolution would arguably advance party and judicial efficiency. *See Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) ("When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay.") (citing *Purolite Int'l, Ltd. V. Rohm & Hass Co.*, 24 U.S.P.Q.3d 1857 (E.D. Pa. 1992)).

BY THE COURT:

/s/ Hon. Kelley B. Hodge

_____

HODGE, KELLEY B., J.